UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS CIFUENTES, ANA MARIA PULIDO and CALIXTO ESPINAL individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> 7905 TAVERN CORP. d/b/a MELAO and HERNAN REJAS, <br><br> Defendants. | Case No.: <br><br><br> **COMPLAINT** <br><br> **Collective Action and Class Action Complaint** |

Plaintiffs CARLOS CIFUENTES ("Plaintiff Cifuentes"), ANA MARIA PULIDO ("Plaintiff Pulido") and CALIXTO ESPINAL ("Plaintiff Espinal") (collectively, the "Plaintiffs") individually and on behalf of others similarly situated by and through their attorneys, FISHER TAUBENFELD LLP, allege against Defendants 7905 TAVERN CORP. d/b/a MELAO ("Melao" or the "Corporate Defendant") and HERNAN REJAS ("Defendant Rejas") (the Corporate Defendant and Rejas are collectively "Defendants") as follows:

### NATURE OF THE ACTION

1.      Plaintiffs brings this action (a) pursuant to the FLSA and the regulations thereto on behalf of themselves and other similarly situated employees who were employed by Defendants within three (3) years before the filing of the instant Complaint; and (b) pursuant to the NYLL (§ 650 *et seq.*) and the New York Commissioner of Labor's Wage Order (the "Wage Orders,") codified at 12 N.Y.C.R.R. 146 *et seq.* on behalf of themselves and other similarly situated employees who worked on or after the date that is six (6) years before the filing of the instant Complaint, based upon the following acts and/or omissions which Defendants committed:

    i.    Defendants' failure to pay proper minimum wage compensation to Plaintiffs as required by federal and state law and regulations;

    ii.    Defendants' failure to pay proper overtime compensation to Plaintiffs as required by federal and state law and regulations when they worked in excess of forty (40) hours per week;

    iii.    Defendants' failure to provide Plaintiffs with a wage notice and paystubs as required by NYLL § 195;

    iv.    Defendants' failure to provide Plaintiffs with uniform purchase and maintenance payments as required by 12 N.Y.C.R.R. 146-1.7;

    v.    Defendants' failure to reimburse Plaintiffs for the cost of purchasing required uniforms pursuant to 12 N.Y.C.R.R. 146-1.8; and

    vi.    Defendants failure to pay Plaintiff Espinal for all hours worked.

2.    Similarly, Plaintiffs Cifuentes and Pulido bring this action to challenge Defendants' practice of sexual harassment and gender discrimination against Plaintiff Pulido in the terms, conditions, and privileges of Plaintiff Pulido's employment in violation of the Administrative Code of the City of New York, § 8-101 *et seq.* ("City Law").

3.    Additionally, Plaintiff Cifuentes brings this action to challenge Defendants' practice of disability discrimination in the terms, conditions, and privileges of Plaintiffs Cifuentes' employment in violation of the City Law.

4.    Lastly, Plaintiffs Cifuentes and Espinal bring this action to challenge Defendants' practice of age discrimination in the terms, conditions, and privileges of Plaintiffs Cifuentes and Espinal's employment in violation of City Law.

5.     During all relevant times, Defendants employed at least four (4) people and constituted an employer within the definition of the City Law.

6.     Pursuant to § 8-502(c) of the City Law, within ten days of the filing this Complaint with the Court, Plaintiffs will serve a copy of this Complaint on the New York City Commission on Human Rights and on the Corporation Counsel for the City of New York.

7.     Defendants have knowingly and willfully engaged in a policy, pattern or practice of violating the FLSA and NYLL, as detailed in this Complaint.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 201 *et seq.* (Fair Labor Standards Act), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over the New York State law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.     Venue is proper in this District because Defendants conduct business in this district, and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

## THE PARTIES

10.     Plaintiff Carlos Cifuentes is a resident of New York State, who has been employed by Defendants since July 1, 2012.

11.     Plaintiff Cifuentes was at all times material hereto a "person" within the meaning of the City Law, protected from discrimination on the basis of age and disability.

12.     Plaintiff Ana Maria Pulido is a female resident of New York State who has been employed by Defendants since November 22, 2013.

13.     Plaintiff Pulido was at all times material hereto a "person" within the meaning of the City Law, protected from discrimination on the basis of sex and gender.

14.     Plaintiff Calixto Espinal is a resident of New York State who was employed by Defendants from January 4, 2014 until December 31, 2018.

15.     Plaintiff Espinal was at all times material hereto a "person" within the meaning of the City Law, protected from discrimination on the basis of age.

16.     Defendant 7905 Tavern Corp., d/b/a Melao is a domestic business corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 7905 Roosevelt Avenue, Jackson Heights, New York 11375.

17.     Upon information and belief, at all times relevant hereto, Defendants have been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.

18.     In performing their job duties, Plaintiffs worked with goods and materials that have been moved in or produced for interstate commerce and that were not produced wholly in the State of New York.

19.     Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

20.     Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

21.    Upon information and belief, Defendant Rejas resides in the State of New York and is an owner, manager and/or employee of the Corporate Defendant.

22.    Upon information and belief, Defendant Rejas is the owner of Melao, which is a night club engaged in the business of serving beverages to customers.

23.    Defendants employs servers, busboys, bathroom attendants, cashiers, bartenders, disc jockeys, coat check attendants, and security guards, all of whom, upon information and belief, are paid less than required under federal and New York State law for their work each hour and week.

24.    Upon information and belief Defendant Rejas is a principal and officer of the Corporate Defendant.

25.    Defendant Rejas possesses the authority to hire and fire employees, supervise their work schedules, set their rates of pay and maintain payroll records.

26.    Upon information and belief, Defendant Rejas hired managers, including Salvatore and Javier Negreos, and also fired managers.

27.    Defendant Rejas approves the payroll practices for Melao's employees, including Plaintiffs.

28.    Defendant Rejas paid employees, including Plaintiffs, and signed payroll checks.

29.    Defendant Rejas also engaged in day-to-day supervision of Melao and its employees, including Plaintiffs.

30.    Defendants Rejas possesses operational control over Melao and its employees through his financial control over Melao.

31.     Plaintiff Pulido has been employed by Defendants to work as a coat check attendant within the last six (6) years.

32.     Plaintiff Cifuentes has been employed by Defendants to work as a security guard within the last six (6) years.

33.     Plaintiff Espinal was employed by Defendants to work as a security guard within the last six (6) years.

34.     Defendant Rejas is engaged in business in the County of Queens. He is sued individually in his capacity as an owner, officer, employee, and/or agent of the Corporate Defendant.

35.     Defendant Rejas exercises sufficient operational control over the Corporate Defendant's operations to be considered Plaintiff's employer under the FLSA and New York State Labor Law ("NYLL")

36.      Defendant Rejas, as one of the ten largest shareholders of the Corporate Defendant, is individually responsible for unpaid wages under the New York Business Corporation Law (**Exhibit 1**).

37.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the NYLL §§ 2 and 651.

## FACTUAL ALLEGATIONS

### I.     Defendants' Wage and Hour Violations.

38.     At all times relevant hereto, Defendants have committed the following acts and/or omissions intentionally and willfully, with knowledge that they have been violating federal and state laws and that Plaintiffs have been and continue to be economically injured.

39.    Defendants have maintained a policy and practice to not pay Plaintiffs and other similarly situated employees in accordance with federal and New York State law. Defendants maintain a workforce of servers, busboys, bathroom attendants, cashiers, bartenders, disc jockeys, coat check attendants, and security guards, and other positions, all of whom are paid in violation of federal and New York State laws.

40.    Defendants have maintained a policy and practice of failing to compensate Plaintiffs and other similarly situated employees for every hour they have worked at the statutory minimum wage.

41.    Defendants have maintained a policy and practice of failing to pay overtime compensation required by federal and New York State law and regulations to Plaintiffs and other similarly situated employees who worked in excess of forty (40) hours per week.

42.    Defendants have maintained a policy and practice of denying Plaintiffs and other similarly situated employees with reimbursement for uniform purchase and for uniform maintenance pay.

43.    Defendants have maintained a policy and practice of failing to provide Plaintiffs and other similarly situated employees with proper wage notices and paystubs.

**A. <u>Plaintiff Cifuentes' Schedule and Pay.</u>**

44.    Plaintiff Cifuentes began working for Defendants as a security guard on July 1, 2012.

45.    From the beginning of his employment through February 2016, Plaintiff Cifuentes regularly worked from 10:00 p.m. to 4:30 a.m. or 5:00 a.m., seven (7) days a week, with no breaks or days off.

46.     During this time period, Plaintiff Cifuentes regularly worked between 45.5 and 49 hours per week.

47.     From on or about February 2016 to April 23, 2017, Plaintiff Cifuentes' schedule changed to 7:00 p.m. until 4:30 a.m. or 5:00 a.m. on Saturdays and Sundays. Plaintiff Cifuentes' weekday schedule remained the same.

48.     During this time period, Plaintiff Cifuentes worked between 51.5 and 55 hours a week.

49.     On April 23, 2017, Melao closed its doors to all employees and customers for approximately eight (8) months until its reopening on December 15, 2017.

50.     Thereafter on December 15, 2017, Melao no longer operated on Wednesdays.

51.     Plaintiff Cifuentes' work schedule changed from seven (7) days per week to six (6) days per week.

52.     After Melao's reopening, Plaintiff Cifuentes' daily schedule changed back to 10:00 p.m. until 4:30 a.m. or 5:00 a.m., six (6) days a week, with no breaks or days off.

53.     Beginning on December 15, 2017, Plaintiff Cifuentes regularly worked between 39 and 42 hours each week.

54.     Beginning on January 1, 2019, Plaintiff Cifuentes' schedule changed again from six (6) days a week to four (4) days a week.

55.     Plaintiff Cifuentes no longer works on Tuesdays and Thursdays.

56.     Further, throughout his employment, Plaintiff Cifuentes would on occasion drive Defendant Rejas home after Melao closed.

57.     From the beginning of his employment until August or September 2014, Defendants paid Plaintiff Cifuentes $100 per day.

58.     In or about August or September 2014, Plaintiff Cifuentes received a raise to $120 per day, which remains his current wages.

### B. Plaintiff Pulido's Schedule and Pay.

59.     Plaintiff Pulido began working for Defendants as a coat check attendant in November 22, 2013.

60.     From the beginning of her employment through end of November 2016, Plaintiff Pulido regularly worked from 8:00 p.m. to 4:30 a.m. or 5:00 a.m., seven (7) days a week, with no breaks or days off.

61.     During this time period, Plaintiff Pulido regularly worked between 59.5 and 63 hours per week.

62.     Beginning toward the end of November 2016, Plaintiff Pulido's schedule changed from 10:00 p.m. to 4:30 a.m. or 5:00 a.m., seven (7) days a week, with no breaks of days off.

63.     During this time period Plaintiff Pulido regularly worked between 45.5 and 49 hours a week.

64.     On April 23, 2017, Melao closed its doors to all employees and customers for approximately eight (8) months until its reopening on December 15, 2017.

65.     Thereafter on December 15, 2017, Melao no longer operates on Wednesdays.

66.     Beginning December 15, 2017, Plaintiff Pulido's work schedule changed from seven (7) days per week to six (6) days per week.

67.     Plaintiff Pulido's daily schedule remained the same — 10:00 p.m. to 4:30 a.m. or 5:00 a.m.

68.     During this time period, Plaintiff Pulido regularly worked between 39 and 42 hours each week.

69.     On January 1, 2019, Defendants reduced Plaintiff Pulido's schedule from six (6) days a week to four (4) days a week.  Plaintiff Pulido's daily schedule remained the same - 10:00 p.m. to 4:30 a.m. or 5:00 a.m.

70.     From the beginning of her employment Plaintiff Pulido received in cash a maximum pay of forty dollars ($40.00) per night.

71.     Plaintiff Pulido's compensation is dependent on the number of items coat checked per night. Each item coat checked is priced at three dollars ($3.00).

72.     If Plaintiff Pulido earns more than $40.00 in coat check fees in a given night, she is compensated $40.00 from the total sum of coat check fees plus any tips earned. The remaining monies earned from coat check fees are kept by Melao.

73.     If Plaintiff Pulido is unable to procure at least $40.00 of coat check fees during a night of work, Defendants would not pay Plaintiff Pulido the difference to complete her $40.00 salary for that night.  Instead Defendants only pay Plaintiff Pulido what she earned in coat check fees that night.

### C. Plaintiff Espinal's Schedule and Pay.

74.     Plaintiff Espinal began working for Defendants as security guard in January 4, 2014.

75.     From the beginning of his employment through January 2015, Plaintiff Espinal regularly worked from 8:00 p.m. to 4:30 a.m. or 5:00 a.m. for six (6) days a week with no breaks or days off.

76.     During this time period, Plaintiff Espinal regularly worked between 51 and 54 hours per week.

77.     In or about January 2015, Plaintiff Espinal began working five (5) days a week. Plaintiff Espinal's schedule remained the same.

78.     During this time period, Plaintiff Espinal regularly worked between 42.5 and 45 hours per week.

79.     In or about March 2016, Plaintiff Espinal began working from 7:00 p.m. to 4:30 a.m. to 5:00 a.m., five (5) days a week.

80.     During this time period, Plaintiff Espinal regularly worked between 47.5 and 50 hours per week.

81.     Plaintiff Espinal did not work during the period of April 23, 2017 to December 15, 2017 when Melao closed its doors to all employees and customers.

82.     Plaintiff Espinal returned to work following the reopening of Melao.

83.     Defendants fell behind on payroll payments for several weeks following the reopening of Melao.

84.     During this period, Defendant Rejas failed to compensate Plaintiff Espinal for the week of February 16, 2018. Defendant Rejas failed to compensate Plaintiff Espinal for five (5) days of work.

85.     From May 31, 2018 until October 2018, Plaintiff Espinal worked from 6:00 p.m. to 4:30 or 5:00 a.m., four (4) days a week.

86.    During this time period, Plaintiff Espinal regularly worked between 42 and 44 hours per week.

87.    Beginning October 2018, until the end of his employment, Plaintiff Espinal worked from 7:00 p.m. to 4:30 a.m. or 5:00 a.m., four (4) days a week.

88.    During this time period, Plaintiff Espinal regularly worked between 38 and 40 hours per week.

89.    From the beginning of his employment until January 2015, Defendants paid Plaintiff Espinal $120 per day.

90.    In or about January 2015, Defendants lowered Plaintiff Espinal's daily rate from $120 to $100 per day.

91.    Plaintiff Espinal's daily rate of $100 per day remained the same until his resignation on December 31, 2018.

92.    At the end of Plaintiff Espinal's employment, Defendant Rejas failed to compensate Plaintiff Espinal's security deposit, which was obtained during his first week of employment. Plaintiff Espinal's security deposit equals to five (5) days of work.

### D. **Other Violations Affecting Plaintiffs.**

#### 1. **Minimum Wage Violations**

93.    As demonstrated above, Plaintiffs regularly worked more than 40 hours per week but were never paid the minimum wage per hour.

94.    Defendants failed to post a notice of employee rights in a conspicuous location, in violation of 29 C.F.R. § 516.4.

#### 2. **Overtime Violations**

95.     Although Plaintiffs regularly worked more than 40 hours each work, Defendants never paid them anything for their overtime work, either at their regular rate or at an overtime premium of 150% of their regular rate.

### 3. Failure to Pay Uniform Maintenance Fees

96.     Defendants required Plaintiffs Cifuentes and Espinal to wear uniforms when performing their work duties.

97.     Defendants required Plaintiffs Cifuentes and Espinal to purchase the uniforms and to maintain their uniforms.

98.     Defendants have failed to reimburse Plaintiffs Cifuentes and Espinal for the expenses they incurred in purchasing and maintaining the uniforms as required by 12 N.Y.C.R.R. 146-1.8.

99.     Defendants have failed to pay Plaintiffs Cifuentes and Espinal a per diem payment per week for each week they worked as required by 12 N.Y.C.R.R. 146-1.7.

### 4. Notice and Recordkeeping Violations

100.    Defendants failed to provide Plaintiffs with a wage notice in compliance with NYLL § 195.

101.    Defendants failed to provide Plaintiffs with paystubs for the entire period of their employment in compliance with NYLL § 195.

102.    Defendants did not provide Plaintiffs with a notice specifying their rate of pay, the basis of pay, allowances (if any) claimed against the minimum wage (e.g., tips, meals, lodging, etc.), or the identification of the regular pay day.

103.    Defendants also did not provide Plaintiffs with a paystub specifying the pay period, their hourly rate of pay, the regular and overtime hours they work, or any other information required under NYLL § 195.

104.    Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

**5.    Failure to Pay Plaintiff Espinal for all Hours Worked**

105.    Defendants required Plaintiff Espinal to work the first week of his employment without pay.

106.    Plaintiff Espinal's compensation for his first week of work would be held as a security deposit until the end of his employment.

107.    When Plaintiff Espinal resigned on December 31, 2018, Defendants failed to return Plaintiff Espinal's security deposit.

108.    Further, Defendants fell behind on payments following the reopening of Melao on December 15, 2017.

109.    During this time period, Defendants' failed to compensate Plaintiff Espinal for five (5) days of work for the week of February 16, 2018.

110.    Defendants have failed to pay Plaintiffs Espinal for all hours worked.

**II.    Defendant Rejas' Gender Discrimination and Sexual Harassment of Plaintiff Pulido.**

111.    Defendant Reja's unlawfully discriminated against Plaintiff Pulido by making discriminatory comments to Plaintiff Pulido's husband, Plaintiff Cifuentes, about Plaintiff Pulido's gender and/or sex.

112.    Following the reopening of Melao on December 15, 2017, Plaintiff Cifuentes asked Defendant Rejas to rehire Plaintiff Pulido as a coat check attendant.

113.    Defendant Rejas stated in sum and substance that Plaintiff Cifuentes should leave Plaintiff Pulido at home to cook and clean because that is all she is useful for.

114.    Defendant Rejas went on to say that Ms. Pulido's physique is bad for business.

115.    Further, when Defendant Rejas was informed of Plaintiff Cifuentes and Plaintiff Pulido's marriage in and about October 2018, Defendant Rejas asked Plaintiff Cifuentes why he would marry Plaintiff Pulido. In sum and substance, Defendant Rejas told Plaintiff Cifuentes that he is stupid for marrying such a purportedly ugly woman, knowing that there are beautiful women out there and that with his money he would be able to find a beautiful woman.

116.    Defendant Rejas also advised Plaintiff Cifuentes to end his romantic relationship with Plaintiff Pulido because she is too ugly.

117.    Throughout Plaintiff Pulido's employment, Defendant Rejas told Plaintiff Cifuentes on an almost daily basis that Plaintiff Pulido is fat, ugly, and "not worth it."

118.    Defendant Rejas also regularly told Plaintiff Cifuentes in sum and substance that he is stupid for picking an ugly woman who is not worth spending his money on.

119.    During a slow business night at Melao, Defendant Rejas told Plaintiff Cifuentes that the night was slow because the customers would see Plaintiff Pulido as they entered, get scared, and leave.

120.    Lastly, Defendant Rejas has frequently told Plaintiff Pulido that she is too ugly to be smoking a cigarette in front of Melao and prohibited her from smoking outside.  As a result Plaintiff Pulido refrained from smoking outside for much of her employment after December 15, 2017.

121. Defendant Rejas was aware or should have been aware that Plaintiff Cifuentes would advise Plaintiff Pulido that Defendant Rejas had made such statements.

**III**.    **Defendant Rejas' Disability Discrimination Against Plaintiff Cifuentes**

122. Defendant Rejas discriminated against Plaintiff Cifuentes based on his disability, lymphatic cancer.

123. In or about March 2016, Defendant Rejas began making discriminatory comments toward Plaintiff Cifuentes after Defendant Rejas told him to stay home for two (2) days due to his lack of energy. Shortly after, Plaintiff Cifuentes provided Defendant Rejas with medical documentation indicating that he has lymphatic cancer in order to explain his alleged lack of energy.

124. Shortly after, Defendant Rejas disclosed Plaintiff Cifuentes' medical condition to other employees of Melao.

125. Defendant Rejas also advised Plaintiff Cifuentes to stop working so much and enjoy his life because he is too sick and old.

126. Defendant Rejas frequently told Plaintiff Cifuentes that he is going to die.

127. In sum and substance, Defendant Rejas told Plaintiff Cifuentes a couple of times to purchase life insurance, because he is sick and is going to die.

128. On some occasions, Plaintiff Cifuentes drove Defendant Rejas to pick up the payroll checks at another location. On January 12, 2019, Defendant Rejas played a song in the car titled, Learning to Fly, in which Defendant Rejas dedicated it to Plaintiff Cifuentes because it talked about enjoying life, life being short, and relieving of any struggles.

129. Lastly, on December 25, 2018, Defendant Rejas instructed Plaintiff Cifuentes to stay home for the night to deprive him of tips. His wife, Plaintiff Pulido attended her shift.

130.    When Defendant Rejas came into Melao on December 25, 2018, he told Plaintiff Pulido her husband should retire because he is old and sick.

**IV.    Defendant Rejas' Age Discrimination Against Plaintiffs Cifuentes and Espinal**

131.    Defendant Rejas discriminated against Plaintiffs Cifuentes and Espinal throughout their employment based on their age.

132.    Plaintiff Cifuentes is 53 years old and Plaintiff Espinal is 58 years old.

133.    Defendant Rejas frequently told Plaintiff Cifuentes that he is old, should retire and enjoy his money.

134.    Defendant Rejas frequently called Plaintiffs Cifuentes old and old man.

135.    Virtually every week, when Plaintiff Espinal picked up his check from Defendant Rojas, in sum and substance, Defendant Rojas asked if Plaintiff Espinal felt embarrassed to pick up a check due to his age, necessity to work and inability to retire.

136.    Starting mid-2016, Defendant Rejas frequently told Plaintiffs Cifuentes and Espinal that he kept them employed because he felt bad about their inability to find employment elsewhere due to their age and illness.

137.    Defendant Rejas frequently called Plaintiff Espinal elderly when he picked up his check.

138.    Defendant Rejas also regularly mocked Plaintiff Espinal because he had an inflamed prostrate.

**V.    Collective Action Allegations.**

139.    Defendants' violations of the FLSA and NYLL extend beyond the Plaintiffs to all other similarly situated employees.

140.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated current and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

141.    Plaintiffs' Consent to Sue forms are attached as **Exhibit 2**.

142.    Upon information and belief, there are at least 100 current and former servers, busboys, bathroom attendants, cashiers, bartenders, disc jockeys, coat check attendants, and security guards and other employees performing similar duties who have been denied minimum wage and overtime compensation while working for Defendants.

143.    At all relevant times, Plaintiffs and others who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay the statutorily required minimum wage for all hours worked, willfully failing and refusing to pay the statutorily required overtime compensation for hours worked in excess of forty (40) per workweek, and willfully failing to keep records required by the FLSA.  Plaintiffs' stated herein are similar to those of other employees.

144.    In bringing this action, Plaintiffs are representative of and are acting on behalf of the interests of other current and former employees who have worked for Defendants within the last six (6) years.

145.    Similarly situated former and current employees are readily identifiable and locatable through Defendants' records.  These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

**VI.    Class Action Allegations Under Fed. R. Civ. P. 23(b)(3) for Violations of the NYLL.**

146.    Plaintiffs bring this action on behalf of themselves and all other current and former servers, busboys, bathroom attendants, cashiers, bartenders, disc jockeys, coat check attendants, and security guards, and other persons who were or are employed by Defendants but who did not receive compensation required by the NYLL in respect to their work for Defendants.

147.    Upon information and belief, this class of persons consists of not less than 100 persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed.R.Civ.P.23(a)(1).

148.    There are questions of law and fact common to the class, which predominate over any questions affecting only individual members, specifically: whether employment of Plaintiffs by Defendants is subject to jurisdiction and wage and overtime requirements of the NYLL.

149.    The claims of Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of Defendants.

150.    Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of other members of the class.

151.    A class action is superior to the other available methods for the fair and efficient adjudication of the controversy under the standards of Fed.R.Civ.P.23(b)(3).

152.    Plaintiffs bring the third, fourth, fifth, and sixth claims for relief herein on behalf of themselves and all other persons similarly situated as a class action pursuant to Fed.R.Civ.P. 23, in respect to all claims that Plaintiffs and all persons similarly situated have against Defendants as a result of Defendants' violations of NYLL.

**FIRST CLAIM FOR RELIEF**
**(Minimum Wage Violations under the FLSA against all Defendants as to all Plaintiffs)**

153.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154.    Defendants have knowingly and willfully engaged in a policy, pattern or practice of violating the FLSA, as detailed in this Complaint.

155.    Throughout the statute of limitations period covered by these claims, Defendants failed to pay Plaintiffs and others similarly situated the federal minimum wage for each hour worked, in violation of 29 U.S.C. §§ 206(a) and 255(a).

156.    Plaintiffs seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(Overtime Wage Violations under the FLSA against all Defendants as to all Plaintiffs)**

157.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.    Throughout the statute of limitations period covered by these claims, Plaintiffs regularly worked in excess of forty (40) hours per workweek.

159.    At all relevant times hereto, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of knowingly and willfully failing and refusing to pay Plaintiffs and others similarly situated at one and a half times their regular rate of pay for all hours of work in excess of forty (40) hours per workweek, and willfully failing to keep required records, in violation of the FLSA.

160. Plaintiffs seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(Minimum Wage Violations under NYLL against all Defendants as to all Plaintiffs)**

161. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162. Defendants knowingly and willfully paid the Plaintiffs and others similarly situated less than the minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

163. Defendants' failure to pay the Plaintiffs and others similarly situated minimum wage has been willful within the meaning of the NYLL § 663.

164. As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
**(Overtime Wage Violations under NYLL against all Defendants as to all Plaintiffs)**

165. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166. New York law prohibits an employer from permitting an employee to work without paying overtime wages of 150% of his or her regular rate for all hours worked in excess of forty (40) in any workweek.

167.    Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly and repeatedly failed to pay Plaintiffs and others similarly situated at the required overtime rates, one and a half times their regular rate of pay, for hours worked in excess of forty (40) per workweek.

168.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### (NYLL Failure to Notify against all Defendants as to all Plaintiffs)

169.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

170.    Pursuant to §195(1) of the NYLL, within ten business days of Plaintiffs and other similarly situated employees' hiring, Defendants were obligated to provide them with a notice describing, *inter alia*, their hourly regular and overtime rates of pay.

171.    Pursuant to §195(3) of the NYLL, Defendants are obligated to provide Plaintiffs and other similarly situated employees with a paystub, along with their pay, that specified their rate of pay, their hours worked, and the pay period.

172.    Defendants failed to provide Plaintiffs and other similarly situated employees with a notice or paystub for their entire employment in accordance with §195 of the NYLL.

173.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs have sustained damages and seek damages in accordance

with §195 of the NYLL for each week Defendants failed to provide such notice and paystubs, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CLAIM FOR RELIEF
**(NYLL Uniform Violations Against all Defendants as to Plaintiffs Cifuentes and Espinal)**

174. Plaintiffs Cifuentes and Espinal repeat and reallege the previous paragraphs as if fully set forth herein.

175. Pursuant to 12 N.Y.C.R.R. 146-1.7 and 1.8, Defendants were obligated to reimburse Plaintiffs Cifuentes and Espinal and other similarly situated employees for the expenses they incurred in purchasing uniforms and to pay Plaintiffs Cifuentes and Espinal and other similarly situated employees a specific amount per week for uniform maintenance.

176. Defendants failed to reimburse Plaintiffs Cifuentes and Espinal and other similarly situated employees or pay them for maintaining their uniforms.

177. As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs Cifuentes and Espinal and other similarly situated employees have sustained damage and seek recovery for unlawful deductions in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

### SEVENTH CLAIM FOR RELIEF
**(NYLL Failure to Pay Straight Time as to Plaintiff Espinal)**

178. Plaintiff Espinal repeats and realleges all paragraphs above as though fully set forth herein.

179.   At all relevant times hereto, pursuant to NYLL § 190 *et. seq.*, including § 191, Defendants were obligated to pay Plaintiff Espinal and others similarly situated an hourly rate for each hour they worked and not to divert or withhold any portion of their wages.

180.   Defendants failed to pay Plaintiff Espinal and others similarly situated their hourly rate for each hour they worked.

181.   As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff Espinal and others similarly situated have sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL §§ 663 and 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF
### (City Law Gender Discrimination Against all Defendants as to Plaintiff Pulidos and Cifuentes)

182.   Plaintiffs Pulido and Cifuntes repeat and reallege all paragraphs above as though fully set forth herein.

183.   By the acts and practices described above, Defendants created a hostile environment constituting sexual harassment and gender discrimination in violation of the City Law.

184.   Defendant Rejas is individually liable as he has an ownership interest in the Company and has maintained the authority to personally implement personnel decisions such as hiring, firing, and setting compensation of employees, and as such, is an employer within the definition of the City Law.

185.   Moreover, Defendant Rejas is an "employee or agent" of the Company within the definition of § 8-107 (1) (a) of the City Law.

186.    Defendants knew that their actions constituted sexual harassment and/or willfully disregarded Plaintiff Pulido's statutorily protected rights.

187.    Plaintiffs Pulido and Cifuntes are now suffering mental anguish, pain, suffering, and monetary damages as a result of Defendants' unlawful discrimination and harassment in violation of the City Law.

## NINTH CAUSE OF ACTION
### (City Law Disability Discrimination Against all Defendants as to Plaintiff Cifuentes)

188.    Plaintiff Cifuentes repeats and realleges all paragraphs above as though fully set forth herein.

189.    By the acts and practices described above, Defendants discriminated against Plaintiff Cifuentes by making discriminatory comments on the basis of his lymphatic cancer, in violation of the City Law.

190.    Defendants knew that its actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

191.    Plaintiff Cifuentes has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to his reputation as a proximate result of Defendants' discriminatory practices, unless and until this Court grants the relief hereinafter described.

## TENTH CAUSE OF ACTION
### (City Law Age Discrimination Against all Defendants
### as to Plaintiffs Cifuentes and Espinal)

192.    Plaintiffs Cifuentes and Espinal repeats and realleges all paragraphs above as though fully set forth herein.

193.    Plaintiff Cifuentes is 53 years old and qualified for his position when Defendants began discriminating against Plaintiff Cifuentes because of his age.

194.    Plaintiff Espinal was 58 years old and qualified for his position when Defendants began discriminating against Plaintiff Cifuentes because of his age.

195.    Defendant Rejas is the owner of Melao and is therefore subject to individual liability under City Law.

196.    Defendants intentionally and deliberately discriminated against Plaintiffs Cifuentes and Espinal because of their age in the terms, conditions, or privileges of their employment by acts described in this complaint, in violation of City Law.

197.    Defendants' acts of discrimination were performed with malice, callous and reckless indifference to Plaintiffs Cifuentes and Espinal's protected civil rights.

198.    As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff's Cifuentes and Espinal have endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to their reputation.

199.    As a proximate result of Defendants' unlawful acts of discrimination, Plaintiffs Cifuentes and Espinal have suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment awarding:

A.  Compensatory Damages in an amount to be determined at trial;

B.  Back Pay;

C.  Front Pay;

D.  Emotional Distress Damages;

E.  Prejudgment Interest;

F.  Liquidated Damages pursuant to the FLSA and NYLL;

G.  Plaintiffs' costs and reasonable attorneys' fees; and

H.  Any relief the Court deems just and proper.

Dated: February 19, 2019
       New York, New York

Respectfully submitted,

Michael Taubenfeld
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
Facsimile: (212) 505-2001
*ATTORNEYS FOR PLAINTIFFS*

# EXHIBIT 1

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND
MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE
BUSINESS CORPORATION LAW**

TO:     7905 TAVERN CORP. d/b/a MELAO

PLEASE TAKE NOTICE that CARLOS CIFUENTES, ANA MARIA PULIDO and CALIXTO ESPINAL, as employees of the above corporation who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants, and/or employees of the above corporation for services performed by them for the above corporation within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporation, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf,

THEY ALSO HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and record of shareholders of the above corporation and to make extracts therefrom on or after five (5) days from receipt of this notice.

     Dated: New York, New York
          February 19, 2019

               FISHER TAUBENFELD LLP

                    /s/
               Michael Taubenfeld
               225 Broadway, Suite 1700
               New York, New York 10007
               Phone: (212) 571-0700
               Facsimile: (212) 505-2001
               *ATTORNEYS FOR PLAINTIFFS*

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER
## LIABILITY FOR SERVICES RENDERED

TO:   HERNAN REJAS

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that CARLOS CIFUENTES, ANA MARIA PULIDO and CALIXTO ESPINAL, on behalf of themselves and on behalf of all others similarly situated, intend to charge you and hold you personally liable as one of the ten largest shareholders of 7905 TAVERN CORP. d/b/a MELAO, for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them for the said corporation within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: New York, New York
         February 19, 2019

FISHER TAUBENFELD LLP

_____/s/_____
Michael Taubenfeld
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
Facsimile: (212) 505-2001
*ATTORNEYS FOR PLAINTIFFS*

# EXHIBIT 2

## <u>CONSENT TO SUE UNDER FEDERAL FAIR LABOR STANDARDS ACT</u>

I am an individual who was formerly employed by 7905 Tavern Corp., and/or related entities.  I

consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms

of the Professional Services Agreement signed by me in this case.


_____/s/_____
SIGNATURE


01/30/2019_____
DATE


I hereby declare that I am fluent in both the Spanish and English languages and that English
translation of the above Consent to Sue form is a true translation of the Spanish Consent to Sue
form signed by Carlos Cifuentes, Ana Maria Pulido and Calixto Espinal.


RAQUEL HERAS

**AUTORIZACIÓN PARA DEMANDAR BAJO LA LEY FEDERAL DE NORMAS
RAZONABLES DE TRABAJO**

Soy un individuo que fue empleado de 7905 Tavern Corp., o de entidades relacionadas. Autorizo

ser demandante en una acción para recolectar sueldos impagos.  Acepto cumplir con los términos

del Contrato de Prestación de Servicios Profesionales que firmé para este caso.


Ana Maria Pulidor
_____
NOMBRE

_____
FIRMA

01 - 30 - 19
_____
FECHA

## AUTORIZACIÓN PARA DEMANDAR BAJO LA LEY FEDERAL DE NORMAS RAZONABLES DE TRABAJO

Soy un individuo que fue empleado de 7905 Tavern Corp., o de entidades relacionadas. Autorizo ser demandante en una acción para recolectar sueldos impagos.  Acepto cumplir con los términos del Contrato de Prestación de Servicios Profesionales que firmé para este caso.


_CARLOS E. CIFUENTES_
NOMBRE

_CARLOS CIFUENTES_
FIRMA

_1-30-19_
FECHA

## AUTORIZACIÓN PARA DEMANDAR BAJO LA LEY FEDERAL DE NORMAS RAZONABLES DE TRABAJO

Soy un individuo que fue empleado de 7905 Tavern Corp., o de entidades relacionadas. Autorizo

ser demandante en una acción para recolectar sueldos impagos.  Acepto cumplir con los términos

del Contrato de Prestación de Servicios Profesionales que firmé para este caso.


_____
NOMBRE

_____
FIRMA

_____
FECHA